## M. A. MORRILL v. SMITH COUNTY.

### No. 407.—Decided May 25, 1896.

**1. Municipal Bonds—Condition Precedent—Levy of Tax.**

Bonds of a county were issued in aid of the construction of a railway under an act providing that the subscription should first be approved by a two-thirds vote of the county; that no such bonds should be issued until the court should have first levied an annual tax sufficient to pay the interest and not less than two per cent annually of the principal, and to continue in force until the whole amount of the principal and interest should be paid; and providing that no bonds should be issued except for work completed at the time of issuance. Another section of the act provided that if, at any time, the tax so levied should be insufficient to pay the annual interest, etc., the comptroller of the State should see that the additional tax necessary therefor was levied and collected; another limited the total aid to be given by any county to one enterprise to ten per cent·and the aggregate total to all public improvements to twenty per cent of the assessed values of the county, to be ascertained by reference to the latest assessment for State taxes. An annual tax of one-half of one per cent was levied by the court before the bonds were issued, but this was not sufficient to pay the annual interest and installment of two per cent of principal and such insufficiency was manifest by reference to the last assessment rolls at the time it was levied. Held:

(1) The company being required by the law to perform its part of the contract before the bonds· issued, it cannot be presumed that the Legislature intended to

authorize the court to escape compliance on the part of the county or render the bonds issued void by failing to levy the necessary tax.

(2) The court in making the levy was not required to base its estimate of the amount of tax required upon the last assessment roll but could exercise its best judgment and consider probable future increase or decrease in the assessment.

(3) Such exercise of their discretion and possible error in judgment was contemplated by the provision authorizing the comptroller to remedy any error in their estimate subsequently developed.

(4) The bonds were not rendered invalid, either in whole or in part, by the failure of the court to levy the amount of tax required by law before their issuance.

### 2. Municipal Subscription to Railway—Consolidation.

After a subscription of bonds in aid of the construction of a railway had been voted by a county and the work of construction nearly completed, but before the bonds were issued, the Legislature, by special law, consolidated with such railway company three other companies owning smaller lines remote from that county. This consolidation did not change the identity of the corporation, release the county from its promise to donate the bonds, nor render them invalid.

### 3. Same.

Such bonds were not rendered invalid by the fact that two days before their delivery articles of agreement for the consolidation of the H. & G. N. R. Co., to which they had been subscribed, with the I. & G. N. R. Co., were adopted by each of said companies, when it did not appear that such consolidation was authorized by law, or terminated the legal existence of the former railway.

### 4. Railways—Consolidation.

The provision in the charter of the Houston Tap and Brazoria Ry. Co. authorizing it by vote of a majority of the stockholders to unite and consolidate with any other railway did not confer a continuing authority to make successive consolidations. The consolidation authorized being with one, not several, the power was exhausted when that company became consolidated with the Houston and Great Northern Ry. Co. and did not pass to the consolidated company.

### 5. Same—Construction of Charters.

Where there is a reasonable doubt as to the extent of the privilege conferred in a charter of a private corporation it is to be construed most favorably to the public. See case for example of strict construction of corporate charters with reference to power of consolidation.

### 6. Same.

Under the rule adopted in this State power given to one railway company to consolidate with any other should, it seems, be construed to mean with any other which has like power, and both companies should have such authority in order to render the consolidation legal. (Railway v. Rushing, 69 Texas, 306; Railway v. Morris, 67 Texas, 699, followed.)

### 7. Same—Constitution—Title of Act.

Under art. 3, sec. 35 of the Constitution of the State an act, the object of which, as expressed in its title, is to incorporate a certain railway company, cannot, it seems, properly contain a provision conferring power on other companies to consolidate with the one so created.

### 8. Railway—Consolidation—Charter Construed.

The provision in the charter of the I. & G. N. Ry. Co. that such company "shall have the right to connect itself with any other railroad company within or without the State, and under such terms as it shall deem best to operate and maintain its said railroad in connection or consolidation with any such other railroad company" should receive a strict construction and be held to authorize merely traffic and not corporate consolidation.

### 9. Same—Estoppel.

The holder of a bond issued to a railway company after its de facto consolidation with another company is not estopped from showing that the consolidation was unlawful and had not terminated the existence of the company prior to the delivery of the bond. Quaere: whether the principle of estoppel would not rather forbid the county issuing the bond to such company from denying its corporate existence after a long time had elapsed.

**10.   County Bonds—Payment—Diversion of Funds.**

Bonds of a county in aid of railway construction were issued under a law providing for a tax sufficient to pay two per cent annually of the principal of the bonds, the same to be paid to the treasurer of the state and by him on warrants of the comptroller to the parties entitled. The tax so collected was used by the treasurer and comptroller as a sinking fund in purchasing certain of the bonds for the county for cancellation. Held, that the law required such taxes to be devoted annually to making partial payments pro·rata on the principal of all the bonds, and not to use as a sinking fund in their purchase, and that payment of such taxes to the treasurer constituted payment upon all the bonds pro rata, for which the county was entitled to credit. By the application of the trust fund, which should have been paid pro rata upon their bonds, to use as a sinking fund, the bonds purchased became in equity the property of the holders of the remaining bonds, they receiving the benefit of the discount upon the bonds purchased below par and sharing the loss where a premium was paid.

**11.   Same—Limitation.**

The installments which should have been paid from such taxes being treated as actually paid, the statute of limitations had no application to those which became payable more than four years before the suit was brought.

**12.   Practice.**

Extensive calculations being required to arrive at the judgment and the pleadings being in such form as to render amendment proper the Supreme Court, though the facts are settled, will remand the case on reversal, instead of rendering judgment.

Error to the Court of Civil Appeals for the First District, in an appeal from Smith County.

The suit was commenced by Mrs. M. A. Morrill, in the District Court of Smith County, to recover from that county the amount of twenty-three coupon bonds issued by it on October 2, 1873, but under date of May 15, of that year, to the Houston and Great Northern Railroad Company, in pursuance of a vote of two-thirds of the qualified electors of the county and by authority of the Act of April 12, 1871 (Gen. Laws, 12 Leg., p. 29), authorizing counties, cities and towns to aid in the construction of works of internal improvement. The members of the Commissioners Court of the county were also made defendants and a writ of mandamus compelling them to levy a tax for payment of the bonds was sought.

The cause was tried by the court without a jury and resulted in a judgment for defendants, from which plaintiff appealed. The trial court held that the power to issue bonds under the Act of 1871 did not exist until the condition precedent required by such act, the levying of a sufficient tax to pay annually the interest and two per cent of the principal of the bonds had been first performed, and that the bonds were void from the beginning because the tax levied, one-half of one per cent, was insufficient for that purpose; that the bonds were installment bonds, and being purchased by plaintiff when several installments of the principal were overdue, she was not entitled to protection as an innocent purchaser. The court also found that the Houston and Great Northern and the International and Great Northern railroad companies were consolidated September 30, 1873, by articles executed by both companies, by which proceeding the existence of the former company, to which the bonds had

been voted, was extinguished and the authority to issue the bonds to such company annulled, and the bonds were thereby rendered void from the beginning.

Defendant interposed a plea of limitation which, treating the bonds as payable in annual installments of two per cent of the principal, alleged that all installments falling due more than four years before the suit was commenced were barred by limitation. A demurrer to this plea was overruled, but the question was not determined on the facts because deemed unimportant.

. The sixth and seventh special answers of defendant plead payment of the bonds, the plea being based on the theory that the proceeds of the special bond tax paid by the county into the State treasury, in excess of annual interest, by the law and contract became a partial payment and to be credited on each bond pro rata, of which credit the county could not be deprived by the action of the officers of the State in using this money as a sinking fund in the purchase of bonds instead of paying it out to all the holders of the bonds alike. A demurrer to these pleas was overruled. There were other issues raised which are not necessary to an understanding of the opinion.

The Court of Civil Appeals reversed and remanded the case upon grounds sufficiently appearing in the present opinion. Both plaintiff and Smith County obtained writs of error.

*Dickson & Moroney, T. W. Gregory* and *D. W. Doom,* for plaintiff in error, M. A. Morrill.—The County Court of Smith County, having authority under the Constitution and laws of the State of Texas to issue the bonds, and also the power and authority to decide when the conditions precedent to the issuance of the bonds had been performed, and having before the delivery of said bonds provided for the levy of a tax of one-half of one per cent upon all the real and personal property situated in the county, to pay the annual interest, and two per cent annually of the principal of said bonds, besides the expense of assessing and collecting the same, and recited in each of said bonds that it is secured by a decree of the County Court of said Smith County, and the general law of the State requiring and levying an annual tax upon all the real and personal property in said county of Smith, to raise an annual fund sufficient to pay the interest and two per cent annually on the $200,000, and further by the Constitution of the State providing that the law levying said tax is irrepealable until the principal and interest shall be fully paid, the bonds were valid, notwithstanding the decision of the County Court may have been erroneous in that the tax levied was not quite sufficient to pay the interest and two per cent annually of the principal of all of said bonds. This is true, without reference to whether the bonds were negotiable or held by a purchaser before maturity. Austin v. Railway, 45 Texas, 234; Anderson Co. v. Railway, 52 Texas, 228; Citizens' Bank v. City of Terrell, 78 Texas, 458; Nolan Co. v. State, 83 Texas, 195; Knox v. Aspinwall, 21 How., 544; St. Joseph Township v. Rogers, 16

Wall., 644; Marcy v. Township of Oswego, 92 U. S., 637; Humboldt v. Long, 92 U. S., 642; Sherman Co. v. Simons, 109 U. S., 735; Oregon v. Jennings, 119 U. S., 74, 91; Ins. Co. v. Elizabeth, 42 N. J. L., 235; Cotton v. New Providence, 47 N. J. L., 401; Ins. Co. v. Bd. of Education, 62 Fed. Rep., 778; Risley v. Howell, 64 Fed. Rep., 453.

At the time of the issuance of the bonds there were no definite and certain records kept, or required to be kept, in Smith County, or elsewhere, by which the taxable value of real and personal property in Smith County could be ascertained, and no person, officer or tribunal, but the County Court of Smith County and the individual members thereof, had any means of arriving at such taxable values, and no officer or tribunal, other than the County Court of Smith County, had authority to determine the amount of such taxable values. Constitution of 1869, art. 12, sec. 28; art. 4, sec. 20; art. 5, secs. 19 and 20; Act of Aug. 13, 1870, p. 87; Act of Aug. 15, 1870, p. 204, especially secs. 47, 51, 52, 58, and 62; Act of April 22, 1871, p. 43; Ins. Co. v. Elizabeth, 42 N. J. L., 247; Cotton v. New Providence, 47 N. J. L., 404; Marcy v. Oswego Township, 92 U. S., 640.

By a fair interpretation, the statute under which the bonds were issued leaves to the County Court the determination of every fact which the statute made a condition precedent to the issuance of the bonds, and the County Court, in the issuance of the bonds, having recited in them that all the conditions had been complied with, the county is estopped by such recitals from showing that the condition precedent had not been complied with, as against an innocent purchaser for value. (1.) The law did not contemplate an installment bond. Act of April 12, 1871. (2.) Smith County had the right to issue negotiable bonds in aid of a railway company, the requirements provided by statute being complied with. Act of April 12, 1871; City of Austin v. Nalle, 85 Texas, 542; Nolan County v. State, 83 Texas, 182; Board v. Railway, 46 Texas, 328; Robertson v. Breedlove, 61 Texas, 324. (3.) The bonds were negotiable in form. 1 Randolph on Com. Paper, sec. 174; Story on Bills, sec. 60; Story on Prom. Notes, sec. 44; Brainard v. Railway, 25 N. Y., 496; Teideman on Com. Paper, sec. 21. (4.) Where suit is brought on an obligation, negotiable by law, by one other than the payee, mere possession of the obligation, properly endorsed will raise the presumption that the holder is, himself, or claims through some one who is a purchaser for value before maturity, unless there is proof to the contrary. 1 Daniel on Neg. Ins. (3rd ed.), sec. 812. (5.) Recitals in bonds issued under legislative authority may estop the municipality from disputing their authority as against a bona fide holder for value. Hedges v. Dixon County, 150 U. S., 187; Nolan County v. State, 83 Texas, 193; Lake County v. Graham, 130 U. S., 683. (6.) The county is estopped as against an innocent purchaser. Ins. Co. v. Bd. of Ed., 62 Fed. Rep., 778; Wilson v. Salamanca, 99 U. S., 499; Ins. Co. v. Bruce, 105 U. S., 328; Pana v. Bowler, 107 U. S., 529; Chaffee v. Potter, 142 U. S., 355; Hedges v. Dixon County, 150 U. S., 187; Risley v. Howell, 64 Fed. Rep., 452.

The bond issue was not an installment bond, but merely gave Smith County an option to pay off two per cent of the principal each year.

Smith County being authorized by statute to donate its bonds in aid of railroads, and having agreed to donate these bonds to the H. & G. N. R. R. Co. on the completing and putting in operation of a certain line of road, when the line was completed and put in operation there came into being a binding contract on the part of the county to issue the bonds. Act of April 12, 1871, p. 30, sec. 5; Langdell's Summary of Law of Contracts, secs. 2, 3 and 81; Bishop on Contracts, secs. 87, 331; Livingston County v. Portsmouth Bank, 128 U. S., 126; Railway v. Town of St. Anne, 101 Ill., 154.

Smith County having the right, under the statute, to donate its bonds to aid in the construction of a railway, on certain conditions, this necessarily involved the right of the county to make a binding contract to so donate its bonds upon the condition being complied with. County of Moultrie v. Savings Bank, 92 U. S., 631; Railway v. Town of St. Anne, 101 Ill., 154; Thomas v. County of Morgan, 69 Ill., 487.

A municipal corporation may ratify the unauthorized acts and contracts of its agents and officers which are within the scope of its powers; and if the bonds issued by Smith County in 1873 were invalid, on account of a failure by the County Court to levy a sufficient tax, such as it had the power to do and such as it was its duty to do, then the levying of a sufficient tax in March, 1876, was a ratification of the bonds and made them valid, especially when the county for twenty years and in numerous ways has recognized their validity. 1 Dillon on Mun. Corp. (4th ed.), sec. 463; Boydston v. Rockwall County, 86 Texas, 237-240; Brown v. Bon Homme County, 46 N. W. Rep., 173; Mills v. Gleason, 78 Am. Dec., 721; Supervisors v. Schenck, 5 Wall., 772; Anderson County Comm'rs v. Beal, 113 U. S., 227-240.

Under section 32, article 12, of the Constitution of 1869, and also section 5 of the Act of April 12, 1871, the County Court of Smith County had the power, upon the vote of two-thirds of the qualified voters of the county, to assess and provide for the collection of a far greater tax than was necessary to support an issue of $200,000 in bonds; the failure to levy a sufficient tax in 1873 was but the defective execution of a valid existing power, and this defective execution could be and was cured by the additional levy in 1876. Constitution of 1869, art. 12, sec. 32; Act of April 12, 1871, sec. 5, p. 31, and sec. 15, p. 32; Boydston v. Rockwall County, 86 Texas, 234; Supervisors v. Schenck, 5 Wall., 772; Anderson County v. Beal, 113 U. S., 227, 240; Brown v. Bon Homme County, 46 N. W. Rep., 173; Mills v. Gleason, 78 Am. Dec., 721.

The consolidation of the Houston & Great Northern Railroad Company and the International Railroad Company was not authorized by law until after the issuance and delivery of the bonds to the Houston & Great Northern Railroad Company. The International R. R. Co. and the Houston & G. N. R. R. Co., being competing lines, operated or projected from Palestine to Laredo and the lower Rio Grande, the attempted consolida-

tion on their part in 1873 was without legislative sanction, contrary to the policy of our government, and void.  Railway v. Bremond, 53 Texas, 117;  2 Morawetz Corp. (2nd ed.), sec. 940;  1 Spelling on Corp., secs. 94, 96;  Lauman v. Railway, 72 Am. Dec., 685;  State v. Bailey, 79 Am. Dec., 406;  Note in 79 Am. Dec., 422 and 423.  The Act of May 8, 1873, did not authorize the H. & G. N. R. R. Co. to consolidate with the International R. R. Co.  Railway v. Bremond, 53 Texas, 117;  Railway v. Georgia, 92 U. S., 675;  Del. Tax Case, 18 Wall., 206;  Tomlinson v. Branch, 15 Wall., 460.

The consolidation of the Houston & Great Northern Railroad Company and the International Railroad Company was not in fact effected until after the issuance and delivery of the bonds to the Houston & Great Northern Railroad Company.  While a subscriber to stock of a railroad, even a completed one, may be released by a material change in the purpose and scope of its business, since his contemplated property rights are thereby affected, this is not true with reference to a donation where the road is completed, the donor not being injured nor the contract changed by a transfer of the property to another company.  If there was an actual legal consolidation of the Houston and Great Northern Railroad Company with the International Railroad Company before the issuance of the bonds, it did not materially change the character or scope of the line contracted for by Smith County, and did not affect the validity of the bonds.  If the Houston and Great Northern Railroad Company was actually and legally consolidated with the International Railroad Company before the delivery of the bonds, and the two merged into the International and Great Northern Railroad Company, the property rights of the constituent corporations were not thereby destroyed, but the new company was entitled to use the names of the two original companies in order to fully realize on their contract assets.

The Houston and Great Northern Railroad Company not having been authorized by its charter or the general law, when it was incorporated, to consolidate, it could make no valid consolidation without the unanimous consent of its stockholders, and not even legislative authority, conferred after its incorporation, could change this.  Morawetz Corp. (2nd ed.), secs. 395, 396;  2 Id., sec. 951;  1 Spelling Corp., sec. 96;  4 Am. & Eng. Encycl. Law, 2721, sec. 5.

The bonds being negotiable and made payable to the Houston and Great Northern Railroad Company or assigns, and regularly assigned in blank by that company, and having been purchased in the due course of trade by Amos Morrill, under whom plaintiff claims, for a valuable consideration, the defendant county is estopped from claiming that they were improperly delivered to the company on account of its consolidation with any other company before the delivery.

No part of the principal of the bonds became due until the fifteenth day of May, 1893, and the suit was commenced on the sixth day of November, 1893, and, therefore, there was no statute of limitation which would apply to plaintiff's cause of action.

If the bonds were installment bonds, being against the county, no statute of limitation would apply to any installment until the claim was first presented to the County Commissioners Court and rejected, and the bonds, instead of being rejected when presented, having been allowed by the County Commissioners Court, no statute of limitation can avail as a defense to plaintiff's suit. Revised Statutes, art. 677; Leach v. Wilson County, 62 Texas, 331; Pruitt v. Durant, 84 Texas, 8; Callaghan v. Salliway, 5 Texas Civ. App., 239.

If the bonds were installment bonds, it not being shown that there were funds on deposit in the State treasury, where the bonds were payable, for the payment of such installments as they matured, no statute of limitation could apply as against such installments. Lincoln County v. Luning, 133 U. S., 529; Underhill v. Trustees, 17 Cal., 173; Freehill v. Chamberlin, 65 Cal., 603.

*Jas. M. Edwards* and *H. C. & Cone Johnson*, for defendant in error, Smith County.—The power, in counties, to issue bonds is not inherent,—was unknown at common law; such power, to be exercised, must be conferred by constitutional or legislative grant. Statutes conferring such authority must be strictly construed; and where such enabling act contains conditions to be performed before the bonds can issue, and prohibits their issuance until such conditions have been first performed, the officers have no power to issue the bonds until such conditions have been first performed. Bank v. Terrell, 78 Texas, 450; Thatcher v. Powell, 6 Wheat., 119; Robertson v. Breedlove, 61 Texas, 316; Burroughs on Public Securities, 206; Cowdrey v. Caneada, 16 Fed. Rep., 532; Merrill v. Monticello, 138 U. S., 673; Barnett v. Denison, 145 U. S., 135; Kelly v. Milan, 127 U. S., 139; Norton v. Dyersburg, 127 U. S., 160; Ottawa v. Carey, 108 U. S., 110; Brenham v. Bank, 144 U. S., 173; Young v. Clarendon, 132 U. S., 340; Hill v. Memphis, 134 U. S., 198; Wells v. Supervisors, 102 U. S., 625; Barnum v. Okolona, 148 U. S., 393; Rich v. Mentz, 134 U. S., 632; People v. Smith, 45 N. Y., 772; Hamlin v. Meadville, 6 Brown (Neb.), 227; People v. Hurlburt, 46 N. Y., 110; Boydstun v. Rockwall County, 23 S. W. Rep., 541 (Texas).

Section 23 of article 12 of the Constitution of 1869, requiring that the Legislature "provide by law, in all cases where a State or county debt is created, adequate means for the payment of the current interest and two per cent as a sinking fund for the redemption of the principal," was mandatory, and the Legislature had not the power to authorize a county to create a debt without providing, in advance, adequate means for the payment of the current interest and at least two per cent of the principal, annually. Constitution 1869, art. 12, sec. 23; Bagby v. Bateman, 50 Texas, 446; Cooley's Const. Lim., 93-94.

The provision contained in section 6 of the enabling act, the Act of April 12, 1871, under which the bonds in suit were attempted to be issued, that "no such bonds shall be issued until the court shall have first levied an annual tax upon all real and personal property situated in the county,

which shall be sufficient to pay the annual interest and not less than two per cent annually of the principal of said bonds, besides the expenses of assessing and collecting the same, was a limitation upon the power of the County Court to issue such bonds, and a condition upon which such power was granted, imposed by the Legislature in obedience to the constitutional mandate; and the power to issue the bonds did not exist until this condition precedent was first performed. Constitution 1869, art. 12, sec. 23; Act April 12, 1871, sec. 6; City of Bryan v. Paige, 51 Texas, 532; Terrell v. Dessaint, 71 Texas, 770-3-5; Waxahachie v. Brown, 67 Texas, 519; Gould v. Paris, 68 Texas, 511; Water and Gas Co. v. Cleburne, 1 Texas Civ. App., 580; Bagby v. Bateman, 50 Texas, 456; Bank v. Terrell, 78 Texas, 450; San Antonio v. French, 80 Texas, 578; Nolan County v. State, 83 Texas, 182; 1 Dillon Mun. Corp., secs. 419, 423, 425, 426; Burroughs Public Securities, 206-7, 336-7-8, 192-3-4, 199, 256-7; Cooley Const. Lim. (5th ed.), 233-4-5-6-7-8, 295-6; Head v. Ins. Co., 2 Cranch., 127; McLure v. Oxford, 94 U. S., 429; Anthony v. Jasper County, 101 U. S., 697; Crampton v. Zabriskie, 101 U. S., 601; Dixon County v. Field, 111 U. S., 92; Bank v. Bergen, 115 U. S., 391; Bank v. Porter, 110 U. S., 615; Davies County v. Dickinson, 117 U. S., 657; Lake County v. Graham, 130 U. S., 682; New Orleans v. Clark, 95 U. S., 644; Sutliff v. Lake County, 147 U. S., 230; Capmartin v. Police Jury, 23 La. An., 190; Breax v. Iberville Parish, 23 La. An., 232; Sterling v. Feliciana, 26 La. An., 59; Benham v. Carrol, 28 La. An., 343; Wilson v. Shreveport, 29 La. An., 673; Knox v. Baton Rouge, 36 La. An., 427; Young v. Concordia, 32 La. An., 392; Cowdrey v. Caneada, 16 Fed. Rep., 532; Coffin v. Commrs., 57 Fed. Rep., 137; Francis v. Howard County, 50 Fed. Rep., 44; s. c., 54 Fed. Rep., 487; Bank v. Nolan County, 59 Fed. Rep., 660; Heidelburg v. Francois County, 12 S. W. Rep., 914; Rogers v. LeSeur County, 59 N. W. Rep., 488; Rainsburg v. Fyan, 127 Pa. St., 74; Canal Company v. Denver, 36 Pac. Rep., 844; Dannock v. Bunting, 37 Pac. Rep., 272; Starin v. Genoa, 23 N. Y., 439; Aurora v. West, 22 Ind., 88; Goodrich v. Detroit, 12 Mich., 279; Barnard v. Knox County, 16 S. W. Rep., 917.

All parts of an act must be construed together, in arriving at the legislative intent; full force and effect must be given to every provision, if possible; and in construing an act the constitutional provision upon the same subject must be kept in view, and no intent to violate or disregard the constitutional requirement will be attributed to the Legislature. If the Act of April 12, 1871, be tested by these rules of construction, the provision in section 14, for an increase of the tax levy can not be held to nullify the "mandatory negation" contained in section 6, that "no such bonds shall be issued until the court shall have first levied an annual tax upon all real and personal property, etc., which shall be sufficient to pay the annual interest and not less than two per cent annually of the principal of said bonds, besides the expenses of assessing and collecting the same," but can only be construed as furnishing a mode of procedure for increasing the tax levy, through the comptroller, in case it should be-

come insufficient, by reason of a decrease in taxable values. Constitution 1869, art. 12, secs. 23, 32; Act April 12, 1871, secs. 6 and 14; Paschal's Laws of Texas, arts. 7374, 7382; Dean v. Lufkin, 54 Texas, 270; Ins. Co. v. Ray, 50 Texas, 519; Railway v. Gross, 47 Texas, 435; 23 Am. and Eng. Encycl. Law, 349, 309, 364; Higgins v. Rinker, 47 Texas, 393; Aldridge v. Mardoff, 32 Texas, 204; Bank v. Terrell, 78 Texas, 456.

When the power to issue negotiable bonds is made to depend upon the existence of a given state of facts which depend, for proof of their existence, upon parol evidence, and the law appoints a tribunal to ascertain and certify the facts, and the bonds are issued and contain recitals by the appointed tribunal that the facts existed which conferred the authority to issue them, such bonds, in the hands of bona fide holders, are enforceable, notwithstanding the facts required to confer the authority did not in fact exist; but where the authority to create the debt is made to depend upon evidence furnished by official records, then the true meaning of the law is that the authority to issue such bonds depends upon the actual, objective existence of the requisite facts, and not upon their ascertainment or determination by any one; and no false recital of the existence of such facts, contained in the bonds, can operate as an estoppel. Bank v. Terrell, 78 Texas, 450; Dixon County v. Field, 111 U. S., 92; Buchanan v. Litchfield, 102 U. S., 278; Sutliff v. Lake County, 147 U. S., 230; Nesbitt v. Riverside, 144 U. S., 610; Bank v. Porter, 110 U. S., 608; Lake County v. Graham, 130 U. S., 682; Burroughs on Public Securities, 299, et seq., 322-3-4-5-6, 336-7-8, et seq.; Buchanan v. Litchfield, 102 U. S., 278; School Dist. v. Stone, 106 U. S., 183; Carroll County v. Smith, 111 U. S., 556.

The Act of April 12, 1871, forbids the idea that the County Court was a tribunal appointed to ascertain (except for its own guidance) or to certify, for intending purchasers of bonds, the values of Smith County property, but said act designates the official assessment of said property for taxes as the source from which said values were to be ascertained, and the County Court, in levying the tax, could not adopt any other estimate of said values than such official assessment, by and according to which assessment, alone, said tax could be collected.

The bonds, being a donation and the county never having received any direct and substantial benefit for them, are void in to-to; and there is no principle of equity which will enable them to be enforced, pro tanto. Hedges v. Dixon County, 150 U. S., 182.

The doctrine of "Municipal decision" is available to innocent purchasers, only. No false recital in the bond can estop the county from showing its falsity, as against the original payee, or as against any subsequent holder who is not an innocent purchaser; and this is true even when the facts embraced within the recital are to be ascertained and determined, by the board issuing the bond, otherwise than by reference to official records. Bank v. Terrell, 78 Texas, 450; Buchanan v. Litchfield, 102 U. S., 289; Dixon County v. Field, 111 U. S., 90; Bank v. Porter, 110 U. S., 615; McLure v. Oxford, 94 U. S., 430; Lake County v. Gra-

ham, 130 U. S., 680; Sutliff v. Lake County, 147 U. S., 235; Bank v. Bergen, 115 U. S., 390; Nesbitt v. Riverside, 144 U. S., 617; Burroughs Pub. Sec., pp. 299, et seq., 336-7-8; Marcy v. Oswego, 92 U. S., 637; Humboldt v. Long, 92 U. S., 642; Coloma v. Eaves, 92 U. S., 484; Sherman County v. Simons, 109 U. S., 735.

One who acquires an instrument, due by installments, after the maturity of one or more installments, takes such paper dishonored, and is not an innocent purchaser; but such paper, in his hands, is subject to all the defenses to which it would be subject in the hands of the original payee. 1 Daniel Neg. Insts. (4th ed.), vol. 1, p. 788; 3 Randolph Com. Paper, sec. 1047; Teideman Com. Paper, sec. 297; Bank v. Kirby, 108 Mass., 501; Little v. Lansing, 147 U. S., 59.

The bonds in suit are installment instruments, and two per cent of the principal was payable and demandable on the first day of each January after their issuance. Machine Works v. Reigor, 64 Texas, 89; Morrill v. Hoyt, 83 Texas, 59; 2 Danl. Neg. Insts., secs. 1213, 1215; Bush v. Stowell, 71 Pa. St., 208; Tucker v. Randall, 2 Mass., 283; 3 Randolph on Com. Paper, sec. 1047; Vinton v. King, 4 Allen, 562; Heywood v. Perin, 10 Pick., 228; Baltimore v. Barnes, 6 Md., 57; Wheelock v. Freeman, 13 Pick., 165; Newgass v. New Orleans, 42 La. Ann., 168.

Uncertainty in the amount to be paid at maturity of an instrument, or in time when such instrument is to be paid, renders it non-negotiable, and if, as contended by appellant, the bond merely gave Smith County an option to pay two per cent of the principal each year, it was thereby rendered non-negotiable. Scruggs v. Edwards, 2 Wilson C. C., sec. 768; Land and Cattle Co. v. Carrol, 63 Texas, 49; Hubbard v. Mosely, 11 Gray, 170; Hegler v. Comstock, Bk. 8, Law. Rep. An., 393; Bank v. McMahon, Bk. 3, Law. Rep. An., 192; Richards v. Barlow, 140 Mass., 218; Mahoney v. Fitzpatrick, 133 Mass., 151; Humphrey v. Beckwith, 48 Mich., 151; Way v. Smith, 111 Mass., 523; Choteau v. Allen, 70 Mo., 339; Stultz v. Sylva, 119 Mass., 137; Gordon v. Anderson, 12 Law. Rep. An., 483.

When county bonds are issued originally without authority and in violation of law, they cannot be made valid or enforceable obligations by subsequent acts of recognition or ratification by county officers, in the levy and collection of taxes or otherwise. Bank v. Terrell, 78 Texas, 450; Bryan v. Page, 51 Texas, 532; Boydston v. Rockwall County, 23 S. W. Rep., 543; Marsh v. Fulton County, 10 Wall., 676; McCracken v. San Francisco, 16 Cal., 591; Memphis v. Bethel, 17 S. W. Rep., 191; Davies County v. Dickinson, 117 U. S., 657; Rue v. Railroad Company, 74 Texas, 475; Bloomfield v. Bank, 121 U. S., 121; Doon v. Cummins, 142 U. S., 366; Heidelburg v. Francois County, 12 S. W. Rep., 914; Rev. Stats., art. 677, 1514, sec. 8; Green Co. v. Daniel, 102 U. S., 187; Limestone County v. Rather, 48 A. L. A., 443; State v. McCrillus, 96 Am. Dec., 171; Lincoln County v. Luning, 133 U. S., 529.

This action is not upon the alleged contract between Smith County and the H. & G. N. R. R. Co., which appellant, in his first, second and

third propositions under these assigned errors, contends bound Smith County, upon the completion of the line of road through the county, to issue its bonds to said railway company; but this suit is to enforce the bonds themselves, issued in violation of the law. Wherefore it is a wholly immaterial inquiry, in this connection, whether the vote and the completion of the road created such "binding contract." The bonds, if invalid, cannot be made valid by reason of the fact that they were attempted to be issued in satisfaction of such contract. The validity of the bonds must be tested by the Constitution and the Enabling Act; and no real or supposed right of the railroad company to have valid bonds issued to it could dispense with any requirement of the law.

The favorable vote of the electors and the subsequent completion of the line of road through the county created no such contract between the county and the railroad company as comes within the constitutional protection against impairment; and this is true whether, upon such favorable vote and completion of the line of road, it became discretionary with, or the duty of, of the County Court to issue the bonds. Aspinwall v. Davies County, 22 How., 364; Railway v. Davis County, 6 Kan., 165; Wadsworth v. Eau Claire County, 102 U. S., 534; Railway v. Nemeha County, 10 Kan., 418; Norton v. Shelby County, 118 U. S., 425; Campbell v. Railway, 6 Cold. (Tenn.), 598; Covington v. Railway, 12 B. Mon., 144.

Under section 32, article 12, of the Constitution, and section 5 of the Enabling Act, the county court had ample power to levy a sufficient tax; but, under section 23, article 12, of the Constitution, and section 6 of the Enabling Act, the court had not the power, which was expressly withheld, to create any county debt or to issue county bonds until adequate means and a sufficient tax had first been provided to pay the annual interest and two per cent of the principal, annually. The power to issue the bonds, at all, depending wholly upon legislative grant, their issuance, without the previous levy of a sufficient tax, was not the defective execution of a valid power, but the attempted exercise of a power which was expressly withheld until such sufficient tax had first been levied.

A consolidation of two or more corporations extinguishes the corporate existence of each and creates a new and distinct corporation. Fryer v. Railway, 56 Texas, 609; Railway v. Georgia, 98 U. S., 359; Shields v. Ohio, 95 U. S., 319; Clearwater v. Meredith, 1 Wall., 40; Railway v. Nemeha County, 10 Kan., 428; Railway v. Jones, 95 Am. Dec., 654; Thompson v. Abbott, 61 Mo., 176; Fee v. Gas Light Co., 35 La. An., 413; Lauman v. Railway, 30 Pa. St., 48; State v. Bailey, 16 Ind., 51; McMahon v. Morrison, 16 Ind., 172.

The favorable vote upon the proposition to make a donation to the H. & G. N. R. R. Co. did not create, in the company, any vested right to the donation, but merely conferred upon the county court authority to make it, and to issue county bonds in doing so; and the H. & G. N. R. R. Co. having been dissolved and extinguished by its consolidation

with other railroad companies after said authority was conferred by the vote, and before it was exercised by the issuance of the bonds, such authority was thereby revoked and annulled; and the bonds, being issued after such dissolution and consequent revocation, are void. Act April 12, 1871, secs. 1, 2, 3, 5, 6; Bass v. Fontleroy, 11 Texas, 698; Anderson County v. Railway, 59 Texas, 661; Fryer v. Railway, 56 Texas, 609; Aspinwall v. Davies County, 22 How., 364, 378; Wadsworth v. Eau Claire County, 102 U. S., 534; Norton v. Shelby County, 118 U. S., 425; Marsh v. Fulton County, 10 Wall., 676; Bates County v. Winters, 97 U. S., 83; Harshman v. Bates County, 92 U. S., 569; Ruby v. Shain, 54 Mo., 207; Covington v. Railway, 12 B. Monroe (Ky.), 149; Railway v. Nemeha County, 10 Kan., 428; Livingston County v. Bank, 128 U. S., 102; Railway v. Tazwell, 22 Ill., 147; Burroughs on Pub. Sec., p. 457.

A material change or amendment of, or super-addition to, the charter purposes or powers of a railway company, procured after a favorable vote to donate county bonds to it, revokes the authority to issue such bonds, and, if issued thereafter, they are void. Railway v. Bremond, 53 Texas, 96; Railway v. Crosswell, 5 Hill (N. Y.), 383; Railway v. Nemeha County, 10 Kan., 428; Railway v. Davis County, 6 Kan., 156; Hughes v. Antietam Mfg. Co., 34 Md., 316; Railway v. Tazewell, 22 Ill., 147.

Bonds issued to a corporation which has been dissolved and become extinct, payable to it or its "assigns," cannot be assigned. They are void. Fryer v. Indianola, 56 Texas, 609; Ruby v. Shain, 54 Mo., 207.

No right to a gift becomes vested until the donation is delivered. Bass v. Fontleroy, 11 Texas, 698.

Under the Act of May 8, 1873, the Houston and Great Northern Railroad Company, as it existed in April, 1872, was extinguished and dissolved; and a new corporation, retaining the same name, was created, and upon it were conferred all the rights, powers, privileges and immunities held or possessed by either of those consolidated by said act, including the right, privilege and power to consolidate with any other railroad company, by a majority vote of its stockholders. The International Railroad Company possessed the same power and privilege; and (whether it was necessary for both corporations to possess such power or not) the H. & G. N. R. R. Co. and the International R. R. Co. were duly and legally consolidated on the 30th day of September, 1873. Act May 8, 1873; Charter Houston Tap and Brazoria Rwy. Co.; Bloch Private Corporations, sec. 333.

The International and Great Northern Railroad Company is, and was on the 2d day of October, 1873, a materially distinct and different enterprise from the "Houston and Great Northern Railroad Company" as it existed in April, 1872, when the electors authorized the donation to it. Bremond v. I. & G. N. R. R. Co., 53 Texas, 96.

The circumstances which will annul a contract of subscription to the capital stock of a corporation, entered into by an individual, for profit, will, a fortiori, revoke the authority given by the electors of a county to

confer a gift upon such corporation. The willingness of the public to confer large donations upon private corporations will not be presumed, further than it has been expressed or necessarily implied. Midland v. Gage County, 56 N. W. Rep., 317; Railway v. Bremond, 53 Texas, 96; Railway v. Croswell, 5 Hill (N. Y.), 383; Railway v. Nemeha County, 10 Kan., 428; Railway v. Davis County, 6 Kan., 156; Carlisle v. Railway, 6 Ind., 316; Middlesex v. Locke, 8 Mass., 267; Railway v. Pottle, 23 Barbour, 21; Middlesex v. Swann, 10 Mass., 384; Fulton County v. Railway, 21 Ill., 337; State v. Morristown, 24 S. W. Rep., 13; Hedges v. Dixon County, 150 U. S., 182; Railway v. Putnam, 12 Pacific Rep.

Two per cent of the principal of each bond in suit became due and payable on the 1st day of January, 1874, and on the 1st day of each January thereafter to and including the 1st day of January, 1893, and on each of these respective dates the four-years statute of limitation began to run against one of such installments, and barred it four years thereafter. Machine Works v. Reigor, 64 Texas, 89; Morrill v. Hoyt, 83 Texas, 59; Miles et al. v. Kelly, 25 S. W. Rep., 724; 2 Daniel Neg. Insts. (4th ed.), secs. 1213-1215; 3 Randolph Com. Paper, sec. 1047; Wood, Limitation, secs. 126, 150-151; Vinton v. King, 4 Allen (Mass.), 562; Heywood v. Perrin, 10 Pick., 228; Bush v. Stowell, 71 Pa. St., 208; Tucker v. Randall, 2 Mass., 283; Baltimore v. Barnes, 6 Md., 57; Wheelock v. Freeman, 13 Pick., 165; Burnham v. Brown, 23 Me., 400; Robertson v. Pickerel, 77 N. C., 303.

The bonds in suit are not such claims as the statute required or contemplated should be presented to the Commissioners Court for allowance or rejection; such bonds were neither a "claim" nor an "account" to be audited by the Commissioners Court; they were not to be paid upon the warrant of said court, nor out of the county treasury. So that, the action of the court upon said bonds was without jurisdiction and a nullity. The statute of limitation began to run against each installment from the time when it became due and payable, without the presentation of a claim therefor to, and a rejection thereof by, the Commissioners Court. Rev. Stats., arts. 677, 1514, subdivision 8; Green County v. Daniel, 102 U. S., 187; Limestone County v. Rather, 48 Ala., 443; State v. McCrillus, 96 Am. Dec., 171; Lincoln County v. Luning, 133 U. S., 529; Arts. 986k, 986h and 986j, Sayles' Civil Stats.

Since the year 1876, Smith County having collected and transmitted to the State Treasurer sufficient moneys to pay the current interest and the annual installment, no application or appropriation of such moneys other than that provided in section 8 of the Act of April 12, 1871, can affect Smith County or defeat the plea of limitation; especially, since there is no claim that any annual installment was ever demanded. The act required the annual payment of the current interest and the installment, and only permitted the use of any of the funds in the purchase and cancellation of bonds, in case there was an excess on hand after making these payments for the current year. These provisions of the law,

the combined power of the State Comptroller and the Commissioners Court could not suspend.

Beginning with the year 1876, and for each year thereafter, the defendant county collected and transmitted to the office of the State Treasurer, where the bonds were payable, a sum sufficient to pay the annual interest and the annual installment of 2 per cent. By the collection and transmission of said sufficient sum Smith County did all that was required of it, under the law and under the contract, and all that it could do, and had no further control over said funds or the disbursement thereof, and the same constituted payment of said annual installment of two per cent of the principal of said bonds. Act April 12, 1871, secs. 8, 9, 11; 2 Benjamin on Sales, 923; 3 Randolph, Com. Paper, secs. 1445, 1450; 18 Am. & Eng. Encycl. Law, 195; Gurney v. How, 9 Gray, 404.

Counsel also cited the following additional authorities upon the points made in their brief:

The power to issue bonds did not exist, the condition precedent (the previous levy of a sufficient tax) required by section six of the act not having been performed. Biddle v. Terrell, 82 Texas, 335; Millsaps v. Terrell, 60 Fed. Rep., 193; Bruce v. Pittsburg, 30 Atlantic Rep., 831; Bladen v. Philadelphia, 60 Pa. St., 466; Gilman v. Milwaukee, 61 Wis., 588; Bank v. School Dist., 57 N. W. Rep., 787; Marshall County v. Cook, 38 Ill., 47; McCoy v. Bryant, 53 Cal., 247; Swan v. Arkansas City, 61 Fed. Rep., 478; Reis v. Graft, 51 Cal., 86; Zottman v. San Francisco, 20 Cal., 96; Church v. Ft. Wayne, 36 Ind., 338; Belleview v. Hohn, 82 Ky., 1; Millerstown v. Frederick, 114 Pa. St., 435; State ex rel. Berry v. Babcock, 21 Brown (Neb.), 599; Schaeffer v. Bonham, 95 Ill., 368; Lee v. Racine, 64 Wis., 231; Addis v. Pittsburg, 85 Pa. St., 379; Woodson v. Brassfield, 67 Mo., 344; State v. Kirkly, 29 Md., 85; Clark v. Des Moines, 19 Iowa, 199; Smith v. Newburg, 77 N. Y., 130; Water Works Co. v. City of Niles, 59 Mich., 311; Davis v. Wayne County, 18 S. E. Rep., 373; Danville v. Shelton, 76 Va., 325; Los Angeles Gas Co. v. Toberman, 61 Cal., 199; Craycroft v. Selvage, 10 Bush. (Ky.), 707; McDonald v. Mayor, 68 N. Y., 23; State v. Hilmantel, 21 Wis., 574; Tory v. Milbury, 21 Pick., 64; Kock v. Bridges, 45 Miss., 247; Petition of Douglas, 46 N. Y., 42; Coal Co. v. Ward, L. R. 3 Ex., 172; Wallace v. Mayor of San Jose, 29 Cal., 188; Railway v. Huehn, 59 Fed. Rep., 335; Swift v. Williamsburg, 24 Barb., 427; Cagwin v. Hancock, 84 N. Y., 532; Johnson v. Indianapolis, 16 Ind., 227.

Words of positive prohibition are mandatory. State v. Connor, 86 Texas, 143; Bruce v. Pittsburg, supra; Bladen v. Philadelphia, supra; Marshall County v. Cook, supra; Deuteronomy, Ch. 5, Vs. 7 to 21, inclusive.

Statutes should be so construed, if practicable, that one section will not defeat or destroy another, but explain and support it. Bernier v. Bernier, 147 U. S., 242; Railway v. Backus, 18 Law. Rep. An., 729.

The law requires every purchaser of county bonds to know the provisions of the act authorizing their issuance, the contents of the public

records of the county, and all facts which, being put upon inquiry, he might have ascertained by the exercise of reasonable diligence. Ball v. Presidio County, 29 S. W. Rep., 1042 (Sup. Ct. Texas, March, 1895); Miles v. Kelly, 25 S. W. Rep., 724 (Texas); Sherwood v. La Salle County, 26 S. W. Rep., 650 (Texas).

The power to consolidate with other corporations is a "right, privilege and franchise." Zimmer v. State, 30 Ark., 677.

The consolidation of the H. & G. N. R. R. Co. and the International R. R. Co. did not depend upon legislative ratification; it was legally effected before the passage of the Act of April 24th, 1874, or the compromise act. Campbell v. Wiggins, 2 Texas Civ. App., 7; Railway v. Berry, 113 U. S., 465.

There can not be a donation of bonds without a donee—a payee. Greenwood Railway Co. v. N. Y. Railway Co., 55 Hun. (N. Y.), 606.

The electors are entitled to stand upon the very letter of their promise. If they promised a donation to A, if he would build a certain improvement, it does not follow that B is entitled to the donation, though he build the improvement. The electors designated the donee, and only the one designated can take the donation. Midland v. Gage County, 56 N. W. Rep., 317.

A de facto consolidation can not be questioned in a collateral proceeding. Railway v. Commrs. Stafford County, 36 Kan., 121; Pacific Railway Removal Cases, 115 U. S., 15.

No contract or "vested right" was created by the vote favorable to the donation, and the subsequent completion of the railroad. Railway v. Falconer, 103 U. S., 821; Concord v. Bank, 92 U. S., 625.

Bonds could only be issued in accordance with the provisions and restrictions of the Enabling Act; and if issued otherwise they are void and can not be validated by ratification. Reis v. Graft, 51 Cal., 86; Horton v. Town of Thompson, 71 N. Y., 513.

The County Court, for the purpose of issuing the bonds, were special agents with limited and defined authority, and their power in the premises was exhausted and ceased when the bonds were issued. They could not "ratify" them. Northampton County v. Yohe, 24 Pa. St., 305; Godschalk v. Northampton County, 71 Pa. St., 324; Northumberland County v. Bloom, 3 W. & S. (Pa.), 524; People v. Wayne County, 41 Mich., 4; State v. King, 4 Dec. & B. (N. Car.), 521.

The County Court could not issue bonds differing in terms from the proposition assented to by the electors. Onstott v. People, 15 N. E. Rep., 34.

The legal inception of bonds is their delivery; they can not be operative from a time prior thereto. Bank v. Ashley, 52 N. W. Rep., 74; Brownell v. Greenwich, 22 N. E. Rep., 24.

The moneys collected by taxation for the purpose of paying the interest and principal of the bonds could only be expended in the manner designated by the statute. City of Sherman v. Williams, 19 S. W. Rep., 606.

GAINES, CHIEF JUSTICE.—This suit was brought by the plaintiff in error to recover of Smith County upon certain bonds issued to the Houston and Great Northern Railroad Company.

The substantial defenses were:

1. That the bonds were issued without the levy of a sufficient tax to pay annually the interest and at least two per cent of the principal as required by the statute then in force.

2. That at the time the bonds were issued, the H. & G. N. R. R. Co. had been consolidated with the International Railroad Company and had ceased to have a corporate existence; and that the bonds were therefore void.

3. That if the bonds are valid, they have been in part paid by the collection of a tax to pay an annual installment of two per cent of the principal thereof, and the payment of the same into the treasury for the use of the bondholders; and,

4. That certain installments had matured more than four years before the institution of the suit and were therefore barred by limitation.

The trial court held the bonds void and gave judgment for the defendant. Upon appeal, it was held by the Court of Civil Appeals that the tax levy was insufficient in amount to pay in full the interest and sinking fund upon the indebtedness, but that the bonds were valid for such sum as the levy was sufficient to pay; and that the bonds were payable in annual installments of two per cent, and that sixteen of such installments were barred by limitations.

Each party has sought and obtained a writ of error,—the plaintiff claiming that the Court of Civil Appeals erred in holding that the bonds were not valid for the full amount, and in holding that the sixteen installments were barred,—the defendant assigning that the Court of Civil Appeals erred in not holding the alleged obligations void in toto.

The debentures in question were a part of a series of 400 bonds for $500 each, and purported to be issued pursuant to an Act of the Legislature, approved April 12, 1871, entitled "An Act to authorize counties, cities and towns to aid in the construction of railroads and other works of internal improvement." The Constitution of 1869 was then in force, and it contained the following provision: "The inferior courts of the several counties in this State shall have the power, upon a vote of two-thirds of the qualified voters of the respective counties, to assess and provide for the collection of a tax upon the taxable property, to aid in the construction of internal improvements: Provided, that said tax shall never exceed two per cent upon the value of such property." (Constitution 1869, art. XII, sec. 32.) Section 23 of the same article provided that "it shall be the duty of the Legislature to provide by law, in all cases where State or county debt is created, adequate means for the payment of the current interest, and two per cent as a sinking fund for the redemption of the principal; and all such laws shall be irrepealable until principal and interest are fully paid." The act cited above authorized the respective counties of the State to aid in the construction of rail-

roads or other internal improvements, by taking stock or making a dona-
tion, upon the submission of the proposition to the voters of the county
at an election, and upon a two-thirds vote in favor thereof.   The act
further prescribed that no bonds should issue until the County Court
should have levied an annual tax to pay the annual interest and two per
cent annually of the principal of such bonds.   It was further provided
that, in case the levy made by the County Court should prove insuffi-
cient, it should be the duty of the comptroller to see that a sufficient
levy was made.   We shall have occasion hereafter to discuss these pro-
visions.   We refer to them in this place merely for the purpose of show-
ing that the Legislature in authorizing the creation of the debt, fully
complied with the section of the Constitution, which required that pro-
vision should be made for the payment annually of the interest and at
least two per cent of the principal as a sinking fund.

Upon a proper petition, on the 27th day of March, 1872, the County
Court of Smith County ordered an election in pursuance of the statute,
upon the proposition to donate $200,000 in bonds to the Houston &
Great Northern Railroad Company,—one-half to be delivered when the
railroad should be completed to Tyler, and the other half when it should
be completed to the northern or western boundary of Smith County.
The election having been held on the 6th day of May next thereafter,
the court declared the result in favor of the proposition.   On the 26th
day of May, 1873, the president of the company presented a petition to
the County Court alleging a compliance with the terms of the proposi-
tion on part of the company, and asking that the bonds should be issued.
Action was taken at that term of the court and an order entered levying
an annual tax of three-fourths of one per cent upon the taxable values
of the county, and directing an issue of the bonds.   Certain recitals and
the words "three fourths" were stricken out of the minutes, and the
judge before whom this case was tried found that this was done by direc-
tion of the County Court at the same time at which the original entry
was made.   But we pass over this proceeding, since we do not find a
determination of its effect necessary to a decision of the case.

After some further negotiations, the County Court on the 2nd day
of October, 1873, entered an order directing that the bonds should bear
date as of the 15th day of May, next preceding; and also levying an
annual tax of one-half of one per cent upon the property of the county
for the payment of the annual interest and two per cent annually of
the principal of such bonds.   The trial court found that the tax so levied
was not sufficient to pay the annual interest and installment of the sink-
ing fund provided for by the statute, and that therefore the bonds were
void.   That court also found that the tax rolls for the year 1872,
in which the election was ordered, showed property in Smith County
subject to taxation of the aggregate value of $2,665,426, and for the
year 1873, during which the bonds were issued, of the value of $3,158,-
281.

The correctness of the court's ruling upon this point presents the lead-

ing question in the case. We will now quote such sections of the act under which the bonds were issued as bear upon the question:

"Section 5. A special meeting of the County Court shall be held on the first Monday after the return day of such election when the court shall ascertain and record the result of the election, and, if two-thirds of the qualified voters of the county shall have voted in favor of the proposition at such election, then it shall be the duty of the court to make such orders and adopt such regulations as will give practical effect to the proposition so voted for, and, for that object, the court shall have power to issue county bonds to draw interest not exceeding ten per cent per annum, and to levy a tax upon all real and personal property situated in the county, not to exceed two per cent on the assessed value of such property in any one year.

Sec. 6. All county bonds that may be issued in giving effect to such proposition shall be signed by the presiding justice of the court and shall be attested by the clerk with the seal of the court. But no such bonds shall be issued until the court shall have first levied an annual tax upon all real and personal property situated in the county, which shall be sufficient to pay the annual interest, and not less than two per cent annually of the principal of said bonds, besides the expenses of assessing and collecting the same, which levy shall continue in force until the whole amount of the principal and interest of said bonds shall have been fully paid; provided, that no bonds shall be issued or donation made under the provisions of this act except for such portions of the work, in aid of which it is proposed to issue bonds or make a donation, as shall have been completed at the time when the bonds are issued or donation made.

Sec. 14. If it shall be ascertained at any time that the tax which has been levied for the payment of county bonds issued under the provisions of this act is insufficient to pay the annual interest and two per cent annually of the principal of such bonds, besides the expenses of assessing and collecting such tax, it shall be the duty of the Comptroller to see that such additional tax is levied and collected as will be sufficient to make such payments, which levy shall be continued in force until the whole amount of the principal and interest of said bonds shall have been fully paid.

Sec. 15. No county shall aid in the construction of any one railroad or work of internal improvement to an amount exceeding ten per cent of the assessed value of the real and personal property situated in the county, to be ascertained by reference to the latest assessment of said property for State taxes; and no county shall aid in the construction of any such works of internal improvement to an amount exceeding, in the aggregate, at any one time, twenty per cent on the assessed value of all the real and personal property situated in the county, to be ascertained in like manner." General Laws Reg. Sess., 1871, pp. 30-31.

Section 15 contains the only express limitation found in the act as to the amount of the indebtedness which a county is empowered to cre-

ate. It was not to exceed, for any one work of internal improvement, ten per cent of the taxable values of the county, as shown by the latest official assessment; nor twenty per cent on the aggregate, if there should be more than one. It was not shown, in this case, that aid was extended to any other work under the statute; nor did it appear that the indebtedness sought to be created by the proposition submitted to the voters of Smith County exceeded ten per cent of its taxable values as shown by the last assessment. Ten per cent of the amount shown by the assessment rolls of 1872 was largely more than the amount voted.

Section 5 contains an express grant of power to levy a tax, not exceeding two per cent, for the payment of the debt when created. The tax levied in this case was one-half of one per cent and the complaint is that it was not enough.

Now it must be borne in mind that section 6 contains a proviso that no bonds should issue, except for such portions of the work as should have been completed, according to the terms of the proposition, at the time of their issue. The power to issue the bonds was made dependent upon a compliance on part of the company with the terms of the proposition submitted by the County Court and approved by the vote of the people. When the work was completed a debt was created, and it became the imperative duty of the County Court, or the Police Court, as it was then called to issue the bonds or make the donation, as the case might be. The statute had limited the amount of the indebtedness. It had also fixed a limit to the tax to be levied, and had provided for the levy of a tax to pay the annual interest and installments upon the bonds. Under such circumstances it is unreasonable to presume that the Legislature intended to make the validity of the bonds dependent upon the sufficiency of the tax levied for the payment of the annual interest and installments, or, in other words, to provide that, in case the court should, either intentionally or through error of judgment, make an insufficient levy, the bonds should be absolutely void. It is true that the words "no such bonds shall be issued, until the court shall have first levied an annual tax," etc., make it the imperative duty of the court to levy what they should deem a tax sufficient in amount for the purpose. They are words of command and in a sense mandatory. But they are not necessarily mandatory, in the sense that the bonds should be void in the event the tax for any reason should not be sufficient. We should be loath to hold that any such result was ever intended, even had section 14 been omitted from the act. In determining the amount of indebtedness which the county could create under section 15, it is provided that the court is to be guided by the assessed values as shown by the latest rolls. There is no such provision in section 6 and the omission is significant. If it had been intended, that the County Court should not exercise their best judgment as to the amount of the tax to be levied,—that they should have no discretion, it seems to us that words would have been inserted in section 6 so as to make it read "no bonds shall be issued until the court shall have first levied an annual tax upon all the real and personal prop-

erty situated in the county, as shown by the last official assessment rolls of the county, which shall be sufficient to pay," etc. In such a case, the doctrine announced in the case of the Citizens Bank v. The City of Terrell, 78 Texas, 450, would have applied. But such is not the language of the section. It does not confine the court to the assessed valuation. The court in determining the amount of the levy is left, as we think, to act upon their own judgment, and to consider any probable increase or decrease on the taxable values of the county. The fact that section 15 provides, in effect, that in creating a debt for internal improvements and in fixing the limits of the amount to be created, as that it should not exceed ten per cent of the value of the property situate in the county, the County Court was to be governed by "the latest assessment of said property for State taxes," is not an argument that they should be controlled by the previously assessed official valuation in determining the rate of tax to be levied for the payment of the bonds. On the contrary, the mention of the final assessment in section 15 and its omission in section 6 tend rather to show that the court was not bound to take the assessment as the basis of the levy. We are of opinion, therefore, that the section must be construed as if it had read that the court should levy a tax which in their judgment shall be sufficient to pay the annual interest and an annual installment upon the principal of at least two per cent. If there were any reasonable doubt as to this construction, it is swept away by the fourteenth section of the act. That section provides for the contingency of an insufficient levy by the court, and evidently contemplates that in the exercise of their discretion in determining the amount they might commit an error. It is unreasonable to presume that the Legislature intended that the bonds should be invalid if a sufficient levy was not made, when in the same act it is provided, that the Comptroller should see that an additional tax was levied in the event that such contingency should happen.

It is next insisted that the Houston and Great Northern Railroad Company had consolidated with other companies, and that, because of the alleged consolidation, the purported obligations were void. On the 8th day of May, 1873, which was probably a few days before the work contemplated in the proposition submitted to the voters of the county had been fully completed, the Legislature passed an act which incorporated three other companies into the Houston & Great Northern Railroad Company. Since much stress is laid upon this statute, we copy it in full It reads as follows:

"An Act to consolidate the Houston Tap and Brazoria Railway, the Huntsville Branch Railway, and the Victoria Columbia Railroad with the Houston and Great Northern Railroad.

WHEREAS, The Houston and Great Northern Railroad Company are the owners, by purchase at sale on foreclosure of mortgage by the State, and otherwise, of the Houston Tap and Brazoria Railway; and

WHEREAS, said Houston and Great Northern Railroad Company own

all the stock of the Huntsville Branch Railway, and are operating eight (8) miles of road under the charter thereof; and

Whereas, said Houston and Great Northern Railroad Company are the owners of the stock of the Columbia and Victoria Railroad Company; therefore,

Section 1. Be it enacted by the Legislature of the State of Texas, that the Houston Tap and Brazoria Railway, and the Huntsville Branch Railway, and the Columbia and Victoria Railroad, are hereby made and declared to be, to all intents and purposes in law, a part of the Houston and Great Northern Railroad, and shall be under the control and management of the said Houston and Great Northern Railroad, in like manner as every other part of their railroad; and all rights, privileges, and franchises granted or secured in the charter of either or all of the aforesaid corporations shall inure to and be exercised and enjoyed by the said Houston and Great Northern Railroad Company, as fully and to the same extent as they could have been by either of said companies; provided that nothing herein contained shall have any effect to relieve said consolidated company, or said Houston Tap and Brazoria Railway, from any debt or liability whatever, to which either of said roads may be liable without this act.

Sec. 2. Be it further enacted, that this act shall take effect from and after its passage.

Approved May 8, 1873." (Special Laws 1873, p. 399.)

Did this act have the effect to absolve Smith County from the obligation entered into in its behalf by virtue of the authority conferred by the voters of the county? It has been held by the Supreme Court of the United States, that where the County Court had been authorized by a vote of a township to subscribe to a certain railroad company and where the company, before the subscription was made, consolidated with another company, thus forming a third, that the extinction of the company in favor of which the subscription was valid, worked a revocation of the power; and that the subscription to the new company was void. Harshman v. Bates County, 92 U. S., 569. But in subsequent cases it is held by the same court that, where a subscription by a county is authorized when made, the subsequent consolidation of the company to which it is made does not release the subscription, unless the consolidation works a material and fundamental alteration in the organization and purpose of the company. East Lincoln v. Davenport, 94 U. S., 801; Calloway Co. v. Foster, 93 U. S., 567; Scotland County v. Thomas, 94 U. S., 682. See also Kennecott v. Supervisors, 16 Wall., 464; Smith v. Clark County, 54 Mo., 58; Branch v. Charleston, 92 U. S., 677; Bates County v. Winters, 112 U. S., 325. It is to be inferred from the act itself and from facts of which we have judicial knowledge, that the companies which were absorbed by the Houston and Great Northern Railroad Company owned short and insignificant lines, remote from Smith County, the operation of which by the principal company could in no manner have affected detrimentally the interests of the people of the

county. If there was any result, flowing from the consolidation in question, which was calculated to impair in the slightest degree the consideration which may be presumed to have induced the favorable vote upon the proposition, we may safely say that this record does not show it. For the reasons given, we think the consolidation effected by the act last cited did not release the county from its promise to donate the bonds.

The bonds were issued on the 2nd day of October, 1873. Two days before their delivery articles of agreement for the consolidation of the Houston and Great Northern Railroad Company and the International Railroad Company were adopted by each of those corporations in a meeting of their respective stockholders, and were signed by the president and secretary of each. Now it is also insisted, not only that by this action the contract to deliver the bonds was released, but also that the bonds were void, because of the fact that they were issued to a purported corporation which, by reason of its consolidation with another company, had ceased to exist at the time of their delivery. This contention involves the proposition that the consolidation attempted to be accomplished by the action of the two companies on the 30th day of September was legal. Was it a lawful consolidation?

Before two corporations can consolidate, both must have legislative authority for their action. Let us first inquire, did the Houston and Great Northern Railroad Company have the power? It is not claimed that such authority was conferred upon it by its original charter. But it is contended that the power was acquired through the consolidation of the Houston and Great Northern Railroad Company with the Houston Tap & Brazoria Railroad Company and other companies, which was effected by the Act of May 8, 1873. The charter of the Houston Tap and Brazoria Company contained the following provision: "And said company is hereby authorized, by the vote of a majority of the stockholders, to unite with any other railroad company, converting the stock assets and property with that of any other company into one railroad company, and said road so united, or any portion of the same, may be managed and controlled by one Board of Directors, and as one road, and under such name and style as may be fixed upon by agreement; provided, the name of one of said companies, so uniting, shall be retained." (Special Laws 1856, p. 269.) The argument is that this power of consolidation passed to the Houston and Great Northern Railroad Company by virtue of that provision in the Act of May 8, 1873, which reads as follows: "And all rights, privileges, and franchises, granted or secured in the charter of either or all of the aforesaid corporations, shall inure to and be exercised and enjoyed by the said Houston and Great Northern Railroad Company, as fully and to the same extent as they could have been by either of said companies." The power of consolidation may be conceded to be a right or privilege within the meaning of those words as there employed. But the question arises: Did the power of consolidation granted to the Houston Tap and Brazoria Railroad Company continue, after it had once been consolidated with another company? Was it in-

tended to confer upon the company a continuing authority to make suc-. cessive consolidations? A fair construction of the provision heretofore quoted from the company's charter does not admit of an affirmative answer. The authority is "to unite with any other railroad company." This means any one company, and not any one or more companies. Such meaning cannot be given to the language, save by a very liberal construction; and it would require a still more liberal construction to imply an authority to unite first with one company and then with others in succession. The rule is that where there is a reasonable doubt as to the extent of the privilege conferred in a charter of a private corporation, it is to be construed most favorably to the public. 4 Thompson, Corp., sec. 5345. But, even had the language under consideration been more favorable to the construction claimed by the defendant in error in this case, we should gravely doubt whether the Legislature had ever intended to give to any company the power, by successive consolidation with other companies, to acquire all the railroads of the State and to organize them into one vast monopoly of its carrying trade.

Our conclusion being that the Houston Tap and Brazoria Railroad Company had the power to make but one consolidation, it follows, that when it was consolidated with the Houston and Great Northern Railroad Company, its power was exhausted, and that the right did not pass to the consolidated company.

The discussion of this branch of the case might appropriately end here; for if the Houston and Great Northern Railroad Company did not have the power to consolidate with the International Company, there was no lawful consolidation when the bonds were issued. But there is still another view of the question which, under the decisions of this court, leads to the same result. It has been held that the power given to one railroad company to consolidate with any other like company, without naming any, authorizes any other company to consolidate with it. (Matter of P. P. & C. I. R. R. Co., 67 N. Y., 371.) But a contrary rule is recognized in this State. Railway v. Rushing, 69 Texas, 306. See also Railway v. Morris, 67 Texas, 699. It does not follow that, because the charter of a railway company empowers it in general language "to consolidate with any other railroad company," these words should be construed as conferring the power upon any other company to consolidate with it. They reasonably admit of the construction that the company named is empowered only to unite with any other company which has a like power, and it would seem that, under the general rule previously announced, the construction least favorable to the corporation should control; at all events, when we attempt to adopt the construction insisted upon on behalf of Smith County, in respect to the grant in the charter of the Houston Tap and Brazoria Railroad Company, we encounter a grave constitutional difficulty. The contention is that the special charter of the company not only confers power upon the company to consolidate with any other railroad company, but also upon any other such company to consolidate with it. The title of the act (already

quoted) is clearly sufficient to embrace the grant of any powers to the company incorporated which were appropriate to its purposes. But is there anything in the title that indicated that it was one of the objects of the act to confer power upon all the railroads of the State to consolidate with that company? That involved a distinct grant and enlargement of power to every other railroad company in the State, and it seems to us that, if such was the intent of the Legislature, it comes within the scope of the very evil which was intended to be suppressed by that section of the Constitution which required that the object of every act be expressed in its title. Giddings v. San Antonio, 47 Texas, 548; Peck v. San Antonio, 51 Texas, 490.

Before we dismiss this subject, we may add, that the Act of the 8th of May, 1873, indicates that neither the managers of the corporations named in the act, nor the Legislature which passed it, seemed to have given the charter of the Houston Tap and Brazoria Railroad Company the construction here contended for in behalf of the county. For if the charter gave it the power of successive consolidation, and gave all other companies the power to consolidate with it, no legislation was necessary to accomplish that which the statute in question was evidently intended to effect.

But it is also claimed that, by virtue of section 14 of its charter, the International Railroad Company had an independent power of consolidation with any other company. That section is as follows: "Said company shall have the right to connect itself with any other railroad company, within or without the State, and, under such terms as it shall deem best, to operate and maintain its said railroad in connection or consolidation with any such other railroad company." Special Laws 1870, p. 109. Does this mean that the company is authorized merely to operate its road in connection with that of another company, under such arrangements for a division of profits as may be agreed upon, or that it may merge its corporate existence with another company, and thus become a new corporation? By a very liberal construction it may be held to confer the power of corporate consolidation; but here, again, the rule that in case of doubt it must be resolved against the corporation applies. By a literal and strict construction, the section authorizes merely a traffic consolidation, and, under the rule announced, that construction should prevail.

Upon this branch of the case our conclusion is that no lawful consolidation was effected between the Houston & Great Northern Railroad Company and the International Railroad Company, prior to the execution and delivery of the bonds.

But the proposition is also asserted that there was a de facto consolidation, and that the parties are estopped from disputing the fact in a collateral proceeding. It may be gravely doubted whether the de facto consolidation had gone into effect when the bonds were issued. It is true that the agreement between the two companies was not an agreement to consolidate in future, but an agreement of present consolidation.

But, at the time it was entered into, a resolution was passed by the Houston & Great Northern Company that it should not take effect until the directory of the new company was organized. The fact that two days after this the bonds were issued to the Houston and Great Northern Railroad Company would indicate that the consolidation was not then complete. However this may be, we are of opinion that the plaintiff in this case is not estopped to show that the consolidation was ultra vires, and hence invalid as to her. If the bonds had in fact been issued to the consolidated company, and if there had been an attempt on part of the original company, with which the county had contracted, to ignore the consolidation and to claim that the bonds should be issued to it, then the county might well claim an estoppel. But if there be an estoppel here it must be upon the other part. The county has issued the bonds to the original company, and it may be seriously doubted, at this late day, whether it should be permitted to deny that at the date of the issue the obligee was an existing corporation. See Bank v. Trimble, 6 B. Mon., 599; Receivers v. Renick, 15 Ohio, 322; John v. Bank, 2 Blackf. (Ind.), 367; Cong. Society v. Perry, 6 N. H., 164.

Our conclusion is that the bonds, as issued, were valid obligations against the county for the full amount for which they were executed.

This brings us to the question whether the two per cent, which was annually collected for a payment upon the principal of the bonds, and which was paid into the State treasury for that purpose, should be credited upon the bonds. The eighth, tenth and eleventh sections of the statute under which the bonds were issued provided, in effect, that a sufficient sum should be raised annually by taxation to pay for each year the interest and at least two per cent of the principal of the bonds; that the money so raised should be paid to the Treasurer of the State, and should be paid by him to the parties entitled to receive the same, upon a warrant drawn for that purpose by the Comptroller. Any surplus, not necessary to pay the interest and the two per cent, was to be used in the purchase and cancellation of the bonds. It was made the duty of the Comptroller and of the Treasurer to see to the proper disbursement of the fund.

In pursuance of the act the bonds, which were to run for twenty years, provided for the payment of the interest and of the two per cent of the principal annually. The interest payable was evidenced by coupons. The money which was collected by taxation for the payment of the debt was paid into the State treasury, as required by the statute. From the sum so collected and turned into the treasury, the interest was paid, but the two per cent, which it was contemplated should be paid to the bondholders, was not in fact paid. The eighth section of the act under which the bonds were issued provided that any excess which might remain, after the payment of the interest and two per cent of the principal for the current year, should be used in the purchase and cancellation of the bonds. But, instead of paying the installment of two per cent to the bondholders, the Comptroller treated all that remained after the payment of the

interest as such excess, and used it in the purchase of bonds, presumably for cancellation. The purchases began in the year 1880, and were continued during the remainder of the twenty years for which the bonds were to run. Some of the purchases were made at the instance of the County Court, and presumably all were made with their concurrence and, so far as appears by the record, with the acquiescence of the bondholders. In fact, the parties at interest, as well as the Comptroller, seem to have treated the two per cent installment as a sinking fund, and not as payments on the bonds. If the payment of the two per cent of the principal had been optional with the county or with the Comptroller, this course would have been proper; and, although the law required the installment to be paid to the bondholders, it worked no injustice to any party, provided the bonds so bought were purchased at par, and the installments which did not in fact come to the holders of the other bonds were not considered discharged. As to the county it was all one debt, though, by reason of the transfer of the several evidences of parts of the indebtedness to different holders, it became payable in part to different parties. That the use of the money which should have been applied to the payment of the principal in the purchase of bonds at par was all the same to the county, becomes apparent when we treat the question as if all the obligations had been in the hands of one holder. But we think that it is true, as is contended, that the collection of the tax for the payment of the several installments and its payment into the State treasury was, as to the county, a payment of such installment and a discharge of the obligation of the county pro tanto. The installments so paid became the money of the bondholders, and the statute made the Comptroller and Treasurer their trustees, and when the one, by drawing his warrant for that money, and the other, by paying it, invested the trust funds in bonds, the bonds, to the extent of the funds so invested, became in equity the property of its owners. It is true that a trust of this character is ordinarily created by an investment of the fund by the trustee in property in his own name and for his own benefit. It is also true that, in this case, the Comptroller did not buy the bonds for his own use, but bought them in the interest of the county for the purpose of cancellation. But we think the same principle applies. In so far as the two per cent, which had been paid into the treasury and which belonged to the bondholders, was invested in bonds purchased for the purpose of cancellation the bonds, in proportion to the amount so invested, became the property of the bondholders, and neither the Comptroller nor the county had the right to cancel them. The mere fact of the physical destruction of the evidences of debt did not destroy the right of those whose money had been used in the purchase; nor did it affect the debt. To the extent that the money properly under the control of the Comptroller for that purpose—that is to say, the excess over a sufficiency to pay the interest and two per cent of the principal—was invested in the bonds which were purchased, they should have received a credit, but they should not have been wholly canceled. Therefore, the bondholders upon the first pur-

chase became entitled to so much of the bonds so purchased as was paid for with their money, and were entitled to a sufficiency of the tax collected each year thereafter to pay two per cent of the balance due upon the purchased bonds, and their rights were the same upon each successive purchase. To further illustrate the rights of the parties, we will say that, if all the bonds that were bought had been purchased at par, the original principal of each outstanding bond would have represented the exact amount due its holder. But some of the bonds were purchased at a discount, while for others a premium was paid. It results from the view we take of the case that the holders of the outstanding bonds should receive the benefit of the discount upon the bonds purchased below par, and must bear the loss where a premium was paid.

The judgment must be reversed; but we are not inclined to undertake to make a calculation so as to render judgment here. Besides, the pleadings of plaintiff, though setting up the facts above stated in a general way, do not seem to be drawn with a view to claim an equity in the purchased bonds. The facts of the investment of plaintiff's money in the purchase of bonds should have been averred in an original petition and not in a supplemental petition as was done.

Since we hold that the annual payments of the tax money, when sufficient to pay the annual interest and installment, discharged the installment, and the rights of the holders of the securities were transferred to the bonds which were purchased for cancellation, we are of opinion that the statute of limitations does not apply to the case.

For the reasons given in the foregoing opinion, the judgment of the District Court and that of the Court of Civil Appeals are reversed and the cause remanded.

*Reversed and remanded.*